UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IAN STANDRING,              )
                            )
    Petitioner,           )
                            )
v.                          ) Civil No. 10-321-B-H
                            )
STATE OF MAINE,             )
                            )
    Respondent            )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Ian Standring stands convicted of two counts of gross sexual assault, one count of unlawful sexual contact, and one count of sexual abuse of a minor after a jury trial in the State of Maine.[1] After a thorough review of the state court record I recommend that the Court deny Standring 28 U.S.C. § 2254 relief. On the gross sexual assault conviction, Standring was sentenced to twenty-two years imprisonment with all but fourteen years suspended to be followed by twelve years of probation. The three other sentences are lesser and run concurrently. For the following reasons I recommend that the Court deny Standring federal habeas relief.

*Discussion*

*Relevant Procedural History*

After his conviction Standring filed an application to appeal his sentence and this application was denied. He simultaneously pursued a direct appeal and the Maine Law Court affirmed his convictions in State v. Standring, 2008 ME 188, 960 A.2d 1210. Standring also pursued post-conviction relief in the state court pressing in his initial pro se petition five grounds

---

[1] The trial judge granted Standring's motion for judgment of acquittal on a second count of unlawful sexual contact.

paralleling the five grounds raised in this 28 U.S.C. § 2254 petition.[2] That petition was denied and Standring did not seek discretionary review by the Maine Law Court.

**Parameters of 28 U.S.C. § 2254 Review**

This court will not grant a petition for habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless a state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The Maine courts' factual findings "shall be presumed to be correct" and Standring bears the burden of disproving these factual findings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See also O'Laughlin v. O'Brien, 568 F.3d 287, 298 (1st Cir.2009); McCambridge v. Hall, 303 F.3d 24, 34-35 (1st Cir. 2002).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

Congress has provided that there is a gate-keeping exhaustion of state-law remedies requirement with regards to federal habeas claims of state court determinations. See 28 U.S. C. § 2254(b)(1)(A). Furthermore: "To provide the State with the necessary 'opportunity,'" to review

---

[2] The State makes a slight distinction between the second ground in this petition and the second ground in his state post-conviction petition apparently because Standring includes "Miranda" in his caption in his second § 2254 ground. However the supporting facts in each pleading are virtually identical.

his or her claims "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added) (citation omitted); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007); Jackson v. Coalter, 337 F.3d 74, 85-87 (1st Cir. 2003).

With respect to the State's burden, in order for the state decision to be accorded § 2254(d) deference, the state court must have adjudicated the federal claim on the merits. See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) ( "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.' Teti v. Bender, 507 F.3d 50, 56-57 (1st Cir.2007).").

**Section 2254 Claims**

   *1.     Ineffective Assistance of Counsel*

Standring's first 28 U.S.C. § 2254 ground is one framed as a Sixth Amendment ineffective assistance of counsel claim. He complains that his attorney did not call all of his witnesses, instead relying only on three. According to Standring, his attorney told Standring that it would be too late to get them all to court and that it would look bad for the defense if they had to rely on a subpoena to secure their appearance. This was clearly one of the three grounds in Standring's amended post-conviction petition which stated:

> **GROUND THREE**: Trial counsel was ineffective by failing to call witnesses, Fred Steele and Nikkia Vear who would have provided exculpatory testimony, contradicting testimony and/or impeaching that of the named victims thereby affecting the substantial rights and to the prejudice of petitioner.

(Am. Pet. Post-conviction Review at 1, State App. C.)

This ground was not addressed by the post-conviction court. (Post-conviction Order at 1, State App. C.) The transcript for the state post-conviction proceeding has yet to be transcribed so it is not evident whether at some juncture during the hearing Standring abandoned that claim or whether the post-conviction justice, the same justice who presided over the trial proceedings, neglected to address the claim. What is clear is that Standring failed to seek discretionary review by the Maine Law Court of the denial of post-conviction relief. As stated earlier, 28 U.S.C. § 2254(b)(1) requires § 2254 petitioners to seek discretionary review by the State's high court in order to bring the claim to the federal venue. Baldwin, 541 U.S. at 29; O'Sullivan, 526 U.S. at 845.

### 2. *Sufficiency of the Evidence and Miranda Rights*

Standring's second federal habeas challenge is that the prosecution had insufficient evidence against him, the state's case rested on Standring's confession to the detective after he was badgered for over an hour, and that this confession was inadmissible under Miranda v. Arizona, 384 U.S. 436 (1966). He indicates that he finally told the detective what he wanted to hear and that he was never informed of his right to his attorney or told that he could leave whenever he wanted.

Standring brought an ineffective assistance of trial counsel claim in his direct appeal concerning the failure of trial counsel to file a motion to suppress (a failure that made a direct Miranda challenge not cognizable on direct appeal). His appellate brief explained that the confession he made to Detective Caron "appears from the record to have been the byproduct of custodial interrogation and thus subject to the strictures of Miranda v. Arizona." (Appellant Br. at 43.) The Maine Law Court stated that it would "not consider an ineffective assistance of

4

counsel claim on direct appeal." Standring, 2008 ME 188, ¶ 2, 960 A.2d at 1211 (citing State v. Nichols, 1997 ME 178, ¶ 4, 698 A.2d 521, 522.).

In due course, Standring made this claim in his amended petition for post-conviction review:

> **GROUND TWO**: Trial counsel was ineffective by failing to file pre-trial motions, namely, Motion to Suppress, M.R. Crim. P. 41 thereby affecting the substantial rights and to the prejudice of petitioner.

(Am. Pet. Post-conviction Review at 1, State App. C.)

The post-conviction court addressed this claim in its findings and legal conclusions as follows:

> Prior to his arrest, the petitioner went to the Waterville Police Station to speak to law enforcement. He believed that the victim in count five was going to accuse him of rape and wanted his side of the story heard first. He was interviewed by Detective David Caron, whom the petitioner had met previously. The interview took place in a room at the police station and lasted for just one hour. The interview was videotaped. (Def.'s Ex. 1.)
> During the interview, the petitioner confessed to having sexual contact with both victims. He testified at trial that he confessed because he was confused and suffers from depression; he alleged he was badgered by the officer so the petitioner told the officer what he wanted to hear. …
> Counsel viewed the videotape of the interview three times: twice by herself and once with the petitioner. Counsel saw no basis on which the confession would be excluded at trial. She concluded there was no custodial interrogation or police misconduct and the statements were voluntary. Counsel does not file frivolous motions, even if the statements will be difficult to deal with at trial.
> Counsel discussed with the petitioner the difficulties with regard to the confession. Counsel believed that it was in the petitioner's best interest to plead guilty and take advantage of the offer of a five and one-half years to be served initially. The petitioner wanted a trial, however, and counsel determined that her job was to give him a trial.[3]
> ….

---

[3] The post-conviction order indicates that Standring initially wanted to plead guilty to the charges and receive a sentence of the least amount of incarceration possible and that counsel received multiple plea offers. (Post-conviction Order at 2, State App. C.) Standring said he would plead if the sentence served initially involved fewer than eight years, the amount of incarceration in the plea offer was reduced, and Standring agreed to plead. (Id.) Sometime within a month before the scheduled date of the trial, Standring had a conversation with his father and he decided that he wanted a trial and would not plead guilty. (Id.)

5

> The court has viewed the entire videotape of the petitioner's interview with Detective Caron. Counsel was correct in her determination that a motion to suppress statements would have been denied. The defendant was not in custody. His statements were voluntary. There was no police coercion or misconduct.

(Post-Conviction Order at 3-5.) This court does not have before it the videotaped confession but I have read the pertinent portions of the trial transcript. And based on Standring's own testimony under oath about his interactions with Detective Caron which must be taken as the truth and therefore a reflection of what he would have testified to at a suppression hearing (see Trial Tr. at 291-96, 303, 307-14), counsel's decision not to press the motion to suppress was well within the scope of Strickland performance expectations. On this score I note that the cross-examination of Standring as to his confession was perhaps the most probative interchange of the entire trial. There is no question in my mind that the post-conviction court's factual findings and legal conclusions would survive 28 U.S.C. § 2254(d)(1), (2) and § 2254(e)(1) scrutiny.

In my view, this ground could be denied on its merits even if Standring had adequately exhausted this claim. See 28 U.S.C. § 2254(b)(2). However, as stated above, Standring failed to seek discretionary review by the Maine Law Court of the denial of post-conviction relief and 28 U.S.C. § 2254(b)(1) requires § 2254 petitioners to seek discretionary review of the State's high court in order to bring the claim to the federal venue. Baldwin, 541 U.S. at 29; O'Sullivan, 526 U.S. at 845.

   3.   *Sentencing: Excessive Sentence and the Weight given the Psychological Examination*

Based on the statement of the grounds in his 28 U.S.C § 2254 petition and the state record before me, Standring's third and fourth 28 U.S.C. § 2254 grounds fail for the same reason. In his third ground Standring complains that his sentence was excessive. He maintains that he should have received a shorter sentence of incarceration with twelve years of probation

because twelve years of probation is almost the same as a prison term. This is a woefully undeveloped statement of a 28 U.S.C. § 2254 claim; the State correctly notes that in its current articulation it is a state law claim. The fourth 28 U.S.C. § 2254 challenge relates to Standring's psychiatric evaluation for sentencing purposes. He states that when his forensic evaluation was complete they had done all the tests and they still said that he was a low risk of reoffending. However, the sentencing judge said that she did not agree with this conclusion and determined that he was a high risk for reoffending. Standring feels that the court was bound to follow the report because it was an examination and report ordered by the court.

Standring did not contest the legality of his sentence in the context of his direct appeal. Compare State v. Ricker, 2001 ME 76, ¶¶ 18, 19, 770 A.2d 1021, 1026-27. The State has indicated that Stranding did file an application for leave to appeal his sentence on June 29, 2007, but does not indicate what his grounds were. The State notes that the application was denied on February 1, 2008. It has not included any pleadings or orders that pertain to that application in the § 2254 record.

These two grounds were included in Standring's pro se petition for post-conviction review. However, in the post-conviction assignment order the superior court explained:

> The petitioner further alleges that his sentence was too high because it was comprised of a fourteen-year period during which he would be incarcerated and twelve years of probation. A challenge to the propriety of one's sentence is not properly brought in a petition for post-conviction review. Smith v. State, 479 A.2d 1309, 1311 (Me. 1984).
> The petitioner further alleges that the sentencing judge did not properly consider the results of a court-ordered forensic psychiatric examination when considering the probability of recidivism for purposes of sentencing. A challenge to the propriety of one's sentence is not properly brought in a petition for post-conviction review.

(Post-conviction Assignment Order at 2, State App. C.)

If Standring wanted to challenge this determination -- say to argue that these grounds had a constitutional stature and that he was entitled to review -- he would have had to make those arguments to the Maine Law Court first and there is nothing in this record to suggest that he did. See Baldwin, 541 U.S. at 29; O'Sullivan, 526 U.S. at 845.[4] I conclude that the arguments he raised in his attempt to appeal his sentence are the same arguments raised in his state post-conviction petition and in this § 2254 motion and they do not alert the court to any constitutional infirmity in the state sentencing process.

### 4. *Use of Standring's Past against Him while Disallowing Use of Victims' Past*

Finally, Standring is dissatisfied that the court allowed the prosecution to use his past against him during the jury trial to cast him in a bad light but, when Standring's attorney wanted to use the victims' pasts against them, the court blocked the effort.

In his memorandum on direct appeal Stranding advanced three issues and one was that he was denied his right to a fair trial when the trial court denied defense counsel the opportunity to cross-examine either of the alleged victims about their history of previous sexual abuse and allowed the prosecution to impeach Standring's credibility with highly prejudicial proof of a previous criminal conviction. (Appellant Br. at 35- 39, State App. B.)[5]

Although the motions in limine were not included in the record provided to this court, it is clear that the state filed a motion to preclude the defense from cross-examining the victims on their prior sexual history and defense counsel filed a motion seeking the exclusion of evidence of

---

[4] If the Court disagrees with this conclusion, the state can be ordered to supplement the record with the pleadings and order apropos the application for leave to appeal his sentence. I did not take this step prior to the recommended decision because Standring has not framed his § 2254 challenges to his sentence as constitutional challenges even though he was alerted to the concern by the post-conviction court's order.

[5] Standring also added that the court failed to issue an immediate curative instruction regarding a courtroom 'outburst' by one of the victims (she began crying when she was leaving the courtroom after her testimony). (Id.)

Standring's prior convictions. The best summary I can find of those pretrial motions in this record is in the appellant brief to the Maine Law Court:

> [T]he State moved, in limine, to preclude the defense from cross-examining either of the alleged victims about their prior sexual history. The State's motion argued that although both of the alleged victims had been sexually abused in the past, evidence of such previous abuse should be limited by Rule 412 of the Maine Rules of Evidence and by the rule set forth in State v. Jacques, 558 A.2d 706 (Me. 1989). At trial … the court essentially granted the prosecution's motion and precluded the defense from inquiring into either of the alleged victim's sexual history.
> Also …the defense moved, in limine, to preclude the prosecution from cross-examining the defendant about any previous criminal conviction, arguing, inter alia, that the probative value of any such impeachment evidence would be substantially outweighed by the potential for unfair prejudice. At trial … the court essentially denied the defense's motion, and allowed the prosecution to cross-examine defendant about a previous criminal conviction.

(Appellant Br. at 4-5, State App. B.) Quoting State v. Robinson, 2002 ME 136, ¶ 13, 803 A.2d 452, 457) Standring clearly presented the issue as being one of his "'constitutional right, subject to the reasonable application of Rule 403, to introduce evidence of a victim's witness's past sexual behavior to expose a possible motive to lie.'" (Id. at 35.)

Robinson prefaced this observation by specifying that the court was applying the Sixth Amendment confrontation clause standard, citing Olden v. Kentucky, 488 U.S. 227, 231 (1988). The Maine Law Court declared simply that the trial court did not abuse its discretion on its evidentiary rulings. Standring, 2008 ME 188, ¶ 2, 960 A.2d at 1211. However, it did cite the just described paragraph and the following paragraph of Robinson:

> Nonetheless, the court acted within its discretion by excluding the evidence, when offered for this purpose, pursuant to Rule 403. "'[T]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system.'" Michigan v. Lucas, 500 U.S. 145, 152 (1991) (quoting United States v. Nobles, 422 U.S. 225, 241 (1975)). "'[T]rial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" [Michigan v.]Lucas, 500 U.S.

9

[145,] 149 [(1991)](quoting [Delaware v.] Van Arsdall, 475 U.S. [673,] 679 [(1986)]).

Robinson, 2002 ME 136, ¶ 15, 803 A.2d at 457-58.

Although the Maine Law Court's treatment of Standring's argument was brevis, it is fair to conclude that the Court and defense counsel were on the same page in terms of identifying the constitutional dimensions of the concern.

With regards to Standring's prior conviction and the trial testimony, after establishing Standring's birth date, the first question the prosecutor asked was, "And you're the same Ian Standring that was convicted in this court of burglary of a motor vehicle and theft back on June 9th of 2005. Is that correct?" (Trial Tr. at 303.) Standring simply replied, "Yes, I am." (Id.) Other than confirming that Standring was twenty-one years old at the time, that question and answer was the extent of the trial testimony on his previous convictions.[6]

Standring was actually the first witness to testify concerning his prior criminal status by indicating during direct examination that he was on probation at the time that he was arrested for his alleged conduct with the two minors. (See Trial Tr. at 296.) At a sidebar prior to cross-examination defense counsel indicated that Standring was going to admit the prior convictions and there was no need for the prosecutor to make inquiries outside the presence of the jury. (Id. at 297.) Counsel renewed her objection to the allowance of this line of inquiry, explaining, "we have been skirting around that he went away in June 2005. I think that the minute the prior convictions come in, the going away is going to have new significance, especially now that he said he was on probation. I tried to keep him away from that. I don't know why he did that. I told him not to." (Id. at 297-98.) The prosecutor responded:

---

[6] The transcript does not include the opening or closing statements so I am not able to determine how much ado was made about these convictions in the non-evidentiary portions of the proceedings.

10

> I certainly don't intend to draw any conclusions on the record. I've been very careful to make sure that I didn't bring out anything about him going to jail, which is actually one of the reasons we're not trying to introduce the tape [of his confession], because it's filled with references to his probation and jail and various things.

(Id. at 298.) The trial justice stated that she was "going to leave it that you can inquire about one of each." (Id.) Defense counsel then made a tactical decision not to have the court deliver a limiting instruction at the time of the prosecutor's use of the prior convictions as it could possibly draw more attention to the history than if it was delivered at the close of trial. (Id. at 302-303.)

With respect to the issue of the victims' sexual history, there was a sidebar just prior to defense counsel's cross-examination of the first victim to testify. (Trial Tr. at 60 -62.) The following exchange took place between the prosecutor, Allen Kelley and defense counsel, Pamela Ames:

> MR. KELLEY: There is no evidence of anybody other than this individual back when she was four years old having any type of sexual relationship with her, and I would submit she's indicated in her testimony she's had health classes, she knows the name for vagina, knows the name for penis, and the amount of – the knowledge of what she's described is not beyond the amount of knowledge of a normal thirteen-year-old nowadays.
> THE COURT: Okay.
> MS AMES: At the time of the interview with the social worker, she did – she had not had health classes. She called her vagina a cookie. I mean, that is the tender years aspect of it, and now she's all of a sudden, become very educated. Now, she's been talking about things. She's apparently been educated on things, and my argument is that because of the sexual abuse allegations in Connecticut, not necessarily the four-year-old – excuse me – not necessarily when she was very, very young, but because of the investigation is where she gained knowledge, and I'd like to go into the investigation of why she was at the Department being interviewed.
> MR. KELLEY: The Jacques – The exception in Jacques is so the jury doesn't get the impression that the only way she would know what she's saying is because it happened with the defendant. If she says from the health class she knows those things now, it's not – it's not a question of what she knew then. It's when she testifies today and says what happened, and the question is: Are they going to, from this testimony, think that the only way she could know that is because it

happened? And that clearly, with this record, is not the case. She has the knowledge.

(Id. at 60-61.) The Court found that this victim's testimony on direct exam did "not show any extraordinary knowledge for a person her age in 2007 after having taken health classes" and did not allow the inquiry into prior incidences. (Id. at 62.)

When the second victim was due to be cross-examined, a teenager who was fifteen years old at trial, Standring's attorney indicated that she did not think that the tender years doctrine applied to this young woman and that she could not make that argument "with a straight face." (Id. at 117.) Counsel did make it clear that she wanted to preserve her right to question this victim on whether she had "accused another individual of a crime that she was a victim of" in order to get something she wanted but that she was not going to get into whether or not that crime was sexual in nature or whether the accusation was true or false. (Id. at 118-20.) During cross-examination defense counsel did probe the witness on whether she planned to get a protective order against Standring because she wanted to get back at him. (Id. at 135-36.) On redirect the prosecutor asked the witness whether or not she was mad with Standring and what she wanted to happen to him and the witness said she was mad but that she did not want anything to happen to him. (Id. at 139.) She indicated when questioned that she still wanted to have a relationship with Standring. (Id. at 140.) Defense counsel also explored how this witness felt after she got kicked out of the Standring apartment the night after she had two sexual encounters with the defendant and the victim indicated that this expulsion made her very angry. (Id. at 144.) Counsel did not inquire into the prior accusation discussed at the sidebar.

The case discussed during the trial and in Standring's appellant brief is State v. Jacques, in which the Law Court acknowledged: "Although the wording of M.R.Evid. 412 is not as clear as it might be, the Advisory Committee Note is explicit that 'evidence constitutionally required

to be admitted' overrides the exclusion in the text of Rule 412." 558 A.2d 706, 708 (Me. 1989) (citing, with respect to United States Supreme Court law, Davis v. Alaska, 415 U.S. 308 (1974) for the proposition that a "state's interest in protecting juvenile offender does not take precedence over defendant's right to effectively cross-examine."). That decision expanded:

> Where the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor. A defendant therefore must be permitted to rebut the inference a jury might otherwise draw that the victim was so naive sexually that she could not have fabricated the charge. A number of jurisdictions with similar rules permit the admission of evidence of prior sexual activity for the limited purposes of rebutting the jury's natural assumption concerning a child's sexual innocence and of protecting the defendant's rights.

Id. (footnote omitted).

Standring's case is not so different from the 28 U.S.C. § 2254 petitioner's confrontation clause claim in Wilson v. Warden Civ. No. 10-28-B-W, 2010 WL 1258189, 6 -7 (D. Me. Mar. 17, 2010), apropos which I entered a recommended decision earlier this year.[7] In that case I focused on Olden v. Kentucky, 488 U.S. 227 (1988), a confrontation clause decision which in turn relied on Davis v. Alaska, the Supreme Court precedent relied on in State v. Jacques. In Wilson, I noted:

> In some ways Olden is strong support for Wilson's challenge to this evidentiary ruling as it found in favor of the defendant on a confrontation clause challenge to the Kentucky court's disallowance of testimony meant to undermine the victim's allegations of rape. 488 U.S. at 229-30, 233. However, the evidence in question in Olden was not barred by the state rape shield law, see Dolinger v. Hall, 302 F.3d 5, 9-10 (1st Cir.2002), and Olden reiterated the broad discretion of the trial judge to "impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as 'harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that [would be] repetitive or only marginally relevant.'" Olden, 488 U.S. at 232 (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). In Wilson's case the trial court's assessment of the arguments made by the defense and the prosecutor was

---

[7] This recommendation was adopted March 29, 2010. (Civ. No. 10-28-B-W, Doc. No. 11). That order indicated that the Court was denying Wilson a certificate of appealability.

13

measured and cannot be viewed as contrary to or an unreasonable application of Olden. As the First Circuit explained in Dolinger:
> Under section 2254(d)(1), it is immaterial whether we would assess the Olden factors as the Commonwealth courts have done in the instant case had we been directly presented with these issues in a non-habeas context. Of necessity, a balancing test normally occasions an exercise of the trial court's informed discretion. See Domaingue v. MacDonald, 978 F.Supp. 53, 58 (D.Mass.1997) (upholding discretionary exclusion of evidence of incest victim's alleged prior sexual promiscuity, given that trial court otherwise afforded defendant "a reasonable opportunity to question the witness'[s] veracity and motivation," and to present "a reasonably complete picture of the witness's bias") (citing United States v. Laboy-Delgado, 84 F.3d 22, 28 (1st Cir.1996)). Thus, it is sufficient that we are able to conclude that the Commonwealth courts "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions [ viz., the Olden factors]," "appl[ied] that principle to the facts of the ... case," and reasonably balanced the competing factors. Williams, 529 U.S. at 412-13.
>
> 302 F.3d at 12. See also cf. United States v. Pumpkin Seed, 572 F.3d 552, 561 -62 (8th Cir.2009); Hammer v. Karlen, 342 F.3d 807, 811 -12 (7th Cir.2003); United States v. McCann, No. 05 C 5692, 2009 WL 367502, 7 -8 (N.D. Ill. Feb 10, 2009). "[T]he limitation here was" not "beyond reason." Olden, 488 U.S. at 232.

Wilson, 2010 WL 1258189, 6 -7. I reach a similar conclusion with regards to the trial court's ruling in Standring's case, as affirmed by the Maine Law Court. The trial justice's decision was not an unreasonable application of Davis v. Alaska and Olden v. Kentucky.

## CONCLUSION

For these reasons, I recommend that the Court deny Standring 28 U.S.C. § 2254 relief. I further recommend that a certificate of appealability should not issue in the event Standring files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being

served with a copy thereof. A responsive memorandum shall be filed within *fourteen (14) days after the filing of the objection.*

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 1, 2010